Catron, Ch. J.
delivered the opinion of the court.
Gass’ grant issued June 22, 1820, and he sued the defendants 4th November, 1828. They show no title, save an informal deed covering their possessions, from Andrew Dyche to Hieronymous, one of the defendants, dated 27th December, 1822, but acknowledged by An *398 drew Dyche, the grantor, in 1831, pending the ejectment. By the statute it only took effect from its acknowledgment to communicate title; nor is there any proof of its previous execution, so as to furnish any evidence of the extent and character of the possession, by virtue of which the defendants to the ejectment claimed to hold the land. Furthermore, it was not seven years old when the suit was brought, even from its date.
The defendants proved they had been living within the bounds of Gass’ grant for fourteen or fifteen years next before the trial, (had August, 1831,) cultivating part of the same, but did not show how they held possession, whether consistently with, or adversely to, Gass’ title.
It was insisted in the circuit court, that the plaintiff having neglected for more than seven years to institute suit, and defendants having, during that time, been in possession of the land, he was barred from a recovery by the act of limitations, and so requested the court to charge the jury. This the court refused; but charged that a naked possession for seven years, by a bare trespasser, or one who had no pretence of title, would not be sufficient to defeat the plaintiff’s right of recovery. To which exception was taken. The jury found for the lessor of the plaintiff. This is the first case that presents to our examination the second section of the act of limitations of 1819. The circuit-court was of opinion, that a bare trespasser, having no pretence of title, could receive no protection from the act.
The act provides, “that no person shall have, sue or maintain, any action or suit in law, or equity, for any lands, but within seven years next after his right to commence, have or maintain such suit, shall have come, fallen or accrued; and that all suits, cither in law or equity, for the recovery of any lands, shall be commen *399 ced, had and sued, within seven years next after the title, or cause of action or suit, accrued or fallen, and at no time after the said seven years shall have passed.” Here the plaintiff, Gass, had title, and the defendants were in possession. He had the right and power to sue more than seven years before he brought his action, and is barred, unless the situation of the defendants excludes them from the benefit of the act. That a paper title, legal in its character and competent to be given in evidence in ejectment, is not necessary to protect the possession, is manifest: for such cases the first section of the act had provided, when the title purported to be in fee. The second section intended to protect possessors under title bonds, unproved and informal deeds, not subject to be registered, or not of record in legal form, and every variety of claim, supposed by the possessor to communicate title, legal or equitable, evidenced by writing, whether, in fact, of any validity in law or equity, or not. This seems not to have been controverted in the circuit court, or is it by the. highly intelligent counsel who argued the cause in this court. We are then brought to the important question, whether an adverse possessor for seven years, producing no written evidence of claim to sanction his possession, can defend the same. Such a possession would be bare, and if it were adverse, the possessor a trespasser against him having right, as every adverse holder, requiring the aid of either section of the statute is, and must be, to confirm his title and extinguish that of his adversary.
It is most difficult to distinguish between a defendant in by some appearance of claim, evidenced by writing of no validity in law or equity, and one holding as a trespasser without excuse. The statute intimates no such distinction, and it is believed the courts could not adopt any that could be maintained in practice. Indeed the prominent intention of the legislature was to *400 protect such as occupied the soil, upon the presumption, that by time and accident, the evidences of claim would have been lost by the - end of seven years. This presumption being aided by the circumstance, that he who claimed title, tacitly admitted the occupier to have right of possession, forasmuch as he did not complain of the trespass in the term of seven years. Yet another controlling consideration that influenced the legislature was, to protect the cultivator of the soil, regardless, to a great extent, of the interests of the true owner, who permitted his lands to lie in the forest to the exclusion of population and discouragement of agriculture; or permitted them to be sold to the ignorant and innocent, and after improvements were made, and families raised, involved them in poverty and ruin by eviction. The father may have trespassed; yet after seven years have gone by, a farm been opened, and houses built, policy and justice may concur in the protection of his increased and helpless family, let injury fall where it may. To this end was the act of 1819 passed, in the drafting of which, care, perhaps to a fault, was taken to cover every adverse possessor, disconnected with the true owner’s title.
It is suggested by the counsel of the lessor of the plaintiff, that the second section of the act of 1819, is substantially similar to the third.section of the act of 1715; to protect, under the latter, it had long been settled in North Carolina and this state, that “color of title” was necessary. The naming of the term is calculated to alarm the courts and the country. That it produced more litigation than the statute was intended to cure, as has often been asserted, is very probable. The statute of 1819, was avowedly passed, as the preamble informs us, to cut off disputes as to the true construction of the acts of 1715 and 1797, so that men might know they were safe in taking and buying lands from those who had been seven years in possession, *401 without inquiring further than to ascertain the fact of a notorious, continued, and hostile holding. The statute repealed the former acts, and rejected the comments upon them, other than such as were incorporated in the act of 1819; which was designed to be drafted with a force and plainness not to admit of doubts or conflicting opinions, as to its true construction. More precision, it is believed, would be difficult to attain, than is found in the second section.
The charge of the circuit court, which adopts, to some extent, the old construction of color of title, is clearly erroneous, judging from the face of the act; and this court feels most forcibly the necessity of not looking beyond its import, for aid from extrinsic author ities. It was intended for the protection- of the agriculture of the country. The class engaged in the cultivation of the soil, comprehending the great body of the people of this state, must construe it for themselves, and of course from its face, the most obvious meaning will be adopted, that the act requires no title to be shown by the defendant in aid and sanction of his possession. No ordinary reader would suppose any such thing was required; to do so by the courts, would be incorporating an exception in favor of the plaintiff, by the mere force of construction. This cannot be done; nothing is better settled. M’Ginnis vs. Jack and Cocke;(a) Patton vs M’Clure;(b) Newnan vs Carroll and Hayes;(c) and other decisions, have settled this principle beyond controversy.
It is next insisted that these defendants, standing on the footing of mere trespassers, have not proved their possession of such a character as to protect them; that in order to bar the recovery of the plaintiff, who has title, by a possession in the defendants, who pro *402 duce none, strict proof is required, not only that the first possession was taken under a claim hostile to the real owner, but that such hostility had continued for the whole term to form the bar. 1 Johnson’s Rep. 158. That every presumption is in favor of possession in subordination to the title of the true owner, (9 Johnson’s Rep. 167;) consequently it lies on the defendant to prove his holding adverse, (2 Johnson’s Rep. 239,) but which is a question exclusively for the jury. 9 John. Rep. 102.
To have made out adverse possession, the defendant must have shown a substantial enclosure, and an actual occupancy to the whole extent of that enclosure, definite, positive and notorious, for the whole term of seven years; and that they could defend no more of the land sued for than was thus possessed. 2 John. Rep. 239. 4 John. Rep. 390. 10 John. Rep. 477. We deem these positions undoubtedly true, yet the jury was not left to inquire what the nature of the possession was, because instructed that the defendants had no title, and could not defend themselves by virtue of the statute. For this reason, the judgment will be reversed, and the cause remanded for another trial.
Judgment reversed.

 Martin and Yerger’s Rep. 361.

 Martin and Yerger’s Rep. 333.

 Ante page 18.