GEO. B. ZIMPELMAN v. ELIZABETH POWER ET AL.

Decided February 8, 1905.

**1.—Trespass to Try Title—Pleading—Recovery by Part Owner.**

Plaintiffs in trespass to try title, suing to recover an entire league of land, and showing title to an undivided one-third interest, could recover the whole of such specific portions, not exceeding one-third, as have not been appropriated to others by conveyance of specific parts of the tract from their cotenants.

**2.—Same—Limitation.**

Where, in a suit to recover a league of land, plaintiffs showed title by descent to an undivided third thereof, but more than two-thirds of it had been specifically appropriated to others by conveyances from cotenants owning undivided interests, and the recovery of the excess in such conveyances over the two-thirds the cotenants were authorized to convey was barred by limitation, plaintiffs could recover only what remained, but were not limited to recovering an undivided third interest in what remained.

Appeal from the District Court of Gillespie. Tried below before Hon. Jas. Flack.

*Barnes & Stubbs,* for appellant.

*Chas. L. Lauderdale,* for appellees.

JAMES, CHIEF JUSTICE.—An action of trespass to try title. There

is no statement of facts, except as contained in the judge's conclusions. From them it appears that the Rachel Means league and labor was patented to Rachel Means, a widow, on April 30, 1845, and was her separate property. Her children and heirs were William, Margaret and Hugh Means. She died in 1846.

William Means, by warranty deed, about September, 1847, conveyed to M. Cartwright the eastern third of said league. The persons holding under this deed from Cartwright were included among the defendants. In his conclusions of fact the judge states that, by this deed, William Means selected and sold the eastern one-third of the survey to Cartwright.

About May 11, 1876, the heirs of Margaret Means conveyed to C. C. Howell an undivided third of the league. Howell, about the same time, took a deed from the widow of Hugh Means conveying all her right, title and interest in said league. There were children, however, of Hugh Means, and the last-named deed passed title to only the widow's life estate in one-third of the land. She died in 1896, before the commencement of this action. About May 24, 1876, Howell conveyed to George B. Zimpelman an undivided two-thirds of the league.

Zimpelman, in May, 1882, conveyed by warranty deed to William Hitzfeld a six hundred and three acre tract off the west end of the survey. Also by warranty deed to William Mier, Jr., a six hundred and fifty acre tract, also at the west end of the survey. And in October, 1882, he conveyed by warranty deed to Eliza Johnson another tract of nine hundred and fifty acres adjoining the above, in all two thousand two hundred and three acres.

Excluding the tract covered by the several deeds above mentioned, there was left about the middle of the league a tract of about nine hundred and two acres, which nine hundred and two acres Zimpelman, on October 1, 1889, leased to Smith, one of the defendants, who has since held it, and used it under such lease; and that, since 1894, its reasonable rental value has been ten cents per acre per annum.

As to the excess of land conveyed by Zimpelman over and above one-third, the court found that those holding under his deeds had had such possession as entitled them to the same by limitations. The judge states, in his conclusions of law, that no question was made or raised as to any difference in the value of the several portions of the Means survey.

The plaintiffs in the case were those who represented the title of Hugh Means. Their petition was one in the ordinary form of trespass to try title, and they sued for the entire league. The judgment was in their favor for said nine hundred acres only, and from this judgment Zimpelman alone appeals.

The judge gives, as his reason for this decision, that, by the deed of William Means to Cartwright, the former, so far as he and those in privity with him are concerned, effectually appropriated a specific third of the land, and thereby relinquished claim to the remainder of the league. That Zimpelman obtained title to the undivided one-third of the league by virtue of the deed from the heirs of Margaret Means, but by his deeds for specific portions of the league, of more land than his interest amounted to, he thereby, so far as he was concerned, had effectually selected, appropriated and exhausted his share of the land.

Hence, as to the remainder of the land, that which had not been appropriated as above, to wit, the nine hundred and two acres about the middle of the league, "it being less than the quantity and proportion to which plaintiffs were entitled," the plaintiffs became, if they chose to abide the selections and appropriations made by their former cotenants, entitled to both in law and equity.

The assignments of error challenge the correctness of the conclusions of law giving to the deeds of William Means, and of Zimpelman, for specific portions of the league, the effect of an appropriation by them of such portions as their interest in the league, and of a relinquishment of title to the remainder.

The propositions advanced by appellant are substantially that the sale of specific portions of an estate held in common, by certain of the cotenants, can not effect the interest of the others, unless the latter authorized or ratified same; and that this action, being brought against those holding under William Means and Zimpelman, was a denial or repudiation of their acts in selling specific portions. Another proposition is that all the defendants except Zimpelman (as to the nine hundred and two acres) were granted judgment each for his specific tract, by reason of limitations, and the legal effect of this was, in each instance, to extinguish plaintiff's claim thereto of an undivided one-third interest, and that, therefore, plaintiffs could claim only an undivided one-third of the nine hundred and two acre tract.

If this action had been brought, in the form it was, to recover an undivided one-third of the league, we think plaintiffs would not have been able to recover more than an undivided one-third of any part of the league. But it was brought to recover the entire league, and upon such a petition it is clear that plaintiff could recover the whole or any part of the league, according to their proof of title, legal or equitable. Hence, while it was a suit for the entire tract, it was a suit for any part of the tract as well, and the petition can not be construed as a repudiation or as an affirmation of what had been done by their cotenants.

As to plaintiff's title being defeated in respect to the tracts outside of the nine hundred and two acre tract, because of adverse possession by the several defendants in possession, the contention made is not sustainable. Of course, if no deeds had been made by plaintiff's cotenant, and a specific part or parts of the survey had been appropriated by third parties by adverse possession, plaintiffs could not claim more than their undivided interest in the remainder. The findings of fact say nothing about adverse possession of that part of the land conveyed by William Means. But as to those parts which this appellant, Zimpelman, conveyed, the finding is "as to the excess of quality conveyed by Zimpelman above one-third to which he was entitled, the other several defendants claiming the same through conveyances by him, have had actual, exclusive, adverse, peaceable and continuous possession thereof for such time and in such manner as to entitle them to hold it by limitations." So far as the court found adverse title by limitation, it was based upon or in connection with a claim through the conveyances from Zimpelman. The contention which appellant makes in this regard he seems to base on certain agreements which are copied in the record. He says in the brief: "By agreement filed in court, the recovery of said defendants

was by limitation." These agreements can not be considered, because they are not referred to in the court's conclusions, and there is no statement of facts of which they might form a part. There is nothing making it appear that they were presented to or acted upon by the trial judge in deciding the case. Still, if these agreements be looked to, they do not show that the occupants of the lands outside of the nine hundred and two acres obtained title thereto by limitations independently of the deeds from and under William Means and Zimpelman.

The court, however, seems to have based its decision upon the effect of the deeds from William Means and from Zimpelman, and of the conduct of these persons. In the first place William Means undertook to convey a specific third of the land while owning an undivided third. In the second place Zimpelman, owning an undivided one-third, conveyed specific tracts in excess of his entire interest, and went into possession of nine hundred and two acres of the land that remained untouched by any of said deeds. This nine hundred and two acres was less of the land than plaintiffs were entitled to by virtue of their undivided one-third interest.

When this suit was brought, the acts of William Means and Zimpelman had brought about a complete appropriation of those parts of the land they had undertaken to dispose of. What they had done had resulted in the loss to plaintiffs of their interest in such portions of the league, and had secured to themselves and their vendees plaintiff's interest therein. They not only sold, but, by their sales, placed their purchasers upon these lands, and, to say the least, they, either by their deeds or through their acts, in placing their purchasers in possession under their deeds, secured the full benefit of their respective interests in the league, and the appellant even more than his interest. Under these circumstances the court was not in error in its conclusions of law. So far as William Means and this appellant were concerned, they had effectually separated their share of the land from that of plaintiffs, and appellant was in no position to oppose plaintiffs' claim to the entire nine hundred and two acres that were undisposed of, that being, in fact, less than an undivided one-third of the entire survey would have entitled them to.

These views require us to affirm the judgment.

*Affirmed.*