## MOFFITT v. MEEKS.—199 S. W. (2d) 463.

Middle Section.  October 26, 1946.

Petition for Certiorari denied by Supreme Court, January 17, 1947.

Frank Davenport, of McMinnville, for appellant.

Jeff Fults, of Tracy City, for appellee.

HOWELL, J. The bill in this cause was filed by Fanny Moffitt as sole heir at law of her mother and two uncles and alleges that she is the owner of a small tract of land in Grundy County, Tennessee, containing about ¾ of an acre and that the defendant Ernest Meeks is wrongfully in possession of this land and refuses to vacate it. The bill prays that any claim the defendant may have upon this land be decreed a cloud upon her title and that a writ of possession issue to put her in possession thereof.

In his answer the defendant claims that he bought the land in question from an uncle of the complainant, T. B. Northcut, who had the right to sell it, by an oral contract and that he, the defendant, took possession of the land on January 1, 1937, under this purchase agreement and has had open, actual, continuous and uninterrupted adverse possession of same for more than seven years with the knowledge of the owner and he pleads the seven year statute set out in Section 8584 of the Code in bar of the relief prayed in the bill.

Other questions were raised by the pleadings which we do not deem it necessary to discuss.

The Chancellor found the facts in part as follows:

"From the proof and the record in the cause, the Court is of opinion and finds that on or about January 1, 1937, the complainant, T. B. and J. H. Northcut were the owners of the land in question; that T. B. Northcut and J. H. Northcut have since died; that there was at about that date, a verbal agreement between T. B. Northcut and the defendant that he would sell him the premises at the price of $300.00, to be paid later; that defendant began improving the property, which was known to T. B. Northcut, and that the defendant moved his family into the house on said premises on April 14, 1937."

The Chancellor then said after citing a number of authorities:

"Has defendant shown seven years adverse possession of the premises? I think not. The possession, to be adverse, must be actual so as to make the occupation visible, notorious, hostile, continuous and adverse and thus constitute notice of the claim and possession of the occupant to the public.

"To be adverse, there must be actual possession."

The Court cited among others the case of Lieberman, Loveman & O'Brien v. Clark, 114 Tenn. 117-133, 85 S. W. 258, 69 L. R. A. 732, and held that actual possession of the defendant dated and began from the time he actually occupied the house on the premises which the proof shows to have been April 14, 1937, and a decree was entered granting complainant the relief prayed.

The defendant had paid the purchase price $300.00 into Court and the Court held that he was entitled to an accounting for the improvements made upon the property and ordered a reference to the Clerk and Master for this purpose and directed the $300 to be returned to the defendant.

An appeal was granted before the reference was executed.

The defendant Ernest Meeks has appealed and assigned errors.

The facts are not disputed and the main question for determination is whether or not the defendant had held such possession of the property as entitled him to maintain his plea of the Statute of Limitations of seven years.

The proof shows that the oral trade was made on January 1, 1937, and that the defendant at once went into possession with the knowledge of T. B. Northcut by repairing the fence, putting a roof on the house, putting windows in the house, and making numerous other repairs; that he was there on the premises doing this work, every day the weather permitted work until April 1937; that he had several men working for him on the property and kept his tools in the house at night and in bad weather. Several witnesses established these facts and the principal carpenter John F. Dickey testified that when he commenced working there in January 1937, the house was in bad repair, the roof had rotted off, windows were broken and the house and porch were generally in bad shape and that he finished his work in February 1937. This witness further testified that he saw and talked to T. B. Northcut on the premises while he was working there and that Northcut said he would be glad when Meeks got it fixed as that would increase the value of his adjoining property and that he had sold the property in question to Meeks.

Other witnesses who were not contradicted testified as to the unlivable condition of the house on January 1, 1937, and that the defendant and his employees worked there from January until the house was repaired and that then Meeks moved his family into it in April 1937.

Do these facts constitute a taking of possession under the Statute?

Section 8584 of the Code of Tennessee is as follows:

"Suit must be brought within seven years.—No person or any one claiming under him, shall have any action, either at law or in equity, for any lands, tenements, or hereditaments, but within seven years after the right of action has accrued."

■ It is well settled that the Statute begins to run when the right of action accrues. In this case the question therefore is when did the right of action accrue or, in other words, when did the defendant take possession of the property involved.

In the case of Lieberman, Loveman & O'Brien v. Clark, supra, there is a lengthy discussion of this question. Beginning on page 132 of 114 Tenn., on page 262 of 85 S. W., 69 L. R. A. 732, the Court said:

"Here it is necessary that we should pause for a moment, and note the meaning attached to the terms 'actual possession' and 'constructive possession' in the authorities.

"Of course, it would be idle to attempt a review of the cases within the limits of a judicial opinion, so great is their number. But they are collected in Am. & Eng. Encyc. Law, vol. 1, pp. 822 to 830; vol. 13, p. 745; vol. 28, pp. 238, 239; Cyc. vol. v, pp. 983, 1125-1126. An examination of these authorities, text and notes, will disclose the following:

"There is some diversity in the use of the terms above referred to, but a substantial agreement concerning the true test of adverse possession in cases such as we have before us, wherein it appears there is actual possession of a portion of tract of land by one claiming under color of title defining boundaries. In the first authority cited

in the last paragraph it is said: 'It is well established that possession which is necessary to ripen into title must be actual, and to begin such possession, there must be an entry which will amount to an ouster of the true owner. It must be actual, either of all or part of the land claimed, as the same may be held with color of title or without, because constructive possession follows the title, and there cannot be two possessions of the same land at the same time, and the owner, being in possession by virtue of his title, remains until he is disseised by another entering and holding for himself.' Am. & Eng. Encyc. Law, vol. 1, p. 822. 'Mere naked possession without color of title is adverse only to the extent of the actual possession or inclosure. But an entry into possession under a conveyance from a person having color of title is presumed to be made according to the description in the deed, and his occupancy is construed as possession of the entire lot, where there is no actual adverse possession of the parts not actually occupied by him.' Id., p. 824. 'A man cannot by mere physical means retain land in his exclusive grasp. Possession may be more manifest as to a part than as to the rest. Therefore it is an established rule of law that the actual possession of a part is the possession of the entire tract or boundary covered by the occupant's title or claim of title . . . What is the extent of his possession is to be determined by the limits of his title or color of title. An intruder without color of title is of necessity confined to his mere inclosure.' Id., p. 825, notes, quoted from Core v. Faupel, 24 W. Va. [238], 245. 'The actual fencing and inclosure of the tract are not, unless expressly required by statute, essential to constitute adverse possession, but such acts are very decisive in determining possession and claims of ownership.' Id., p. 828. 'Fences are a means by which possession of land

may be taken and held. They are not, however, the only means. There may be an actual possession without fences or inclosures of any kind if it appears from other facts and circumstances that the plaintiff was exercising exclusive dominion and control over the land.' Id., vol. 13, p. 750.''

It is insisted for the defendant that the repairing of the fences, the roofing of the house and other repairs made, the occupancy by him for this purpose, and the leaving of his tools in the house, all of this with the knowledge of the owner was actual, adverse possession and that these facts are not disputed.

In Michie's Digest, Vol. 11, in the heading ''Limitations of Real Actions and Adverse Possession,'' beginning on page 113 many cases are cited dealing with the question.

Actual residence on or occupancy of the premises is not always necessary provided there be such use of it open, notorious and continuous, as the situation, nature and character of the property is capable of. In this case the record discloses that the house was not fit for occupancy as a home for his family so the defendant took possession for the purpose of repairing it so that he could move in it with his family.

See Fuller v. Jackson, Tenn. Ch. App., 62 S. W. 274, 280, citing Coal & Iron Co. v. Coppinger, 95 Tenn. 526, 530, 32 S. W. 465.

In the old case of Creech v. Jones, 37 Tenn. 631, on page 635, the Supreme Court said:

''In determining what is an actual possession, reference must, of course, be had to the nature and situation of the property, the uses to which it is adapted, and the sort of possession of which it is susceptible. There may be, in law, and actual possession, or what is regarded as

equivalent, without actual occupation, if the property, from its situation and nature, be not suited to the ordinary purpose of cultivation, or permanent improvement or enjoyment.''

In the case of Green v. Cumberland Coal & Coke Co., 110 Tenn. 35, on page 39, 72 S. W. 459, 460, the Court said:

''Actual possession, when the premises are susceptible of it, must, as a general rule, be by inclosure of the land by fences or like improvements, so as to make the occupation visible, notorious, continuous, and adverse, and thus constitute notice of the claim and possession of the occupant to the public; but there are exceptions to the rule where the land is not suitable for cultivation, and the occupant exercises dominion over it, which is possession, when accompanied with the necessary requisites, and asserted in an equally positive manner for other purposes, such as digging ore, mining coal, quarrying stone, and other similar purposes for which the land is alone or most adapted and valuable. Pullen v. Hopkins, 1 Lea, 741; West v. Lanier, 9 Humph. 762; Copeland v. Murphey, 2 Cold. 64; Cooper v. Great Falls [Cotton] Co., 94 Tenn. 588, 30 S. W. 353. Neither residence on nor cultivation of the land is necessary to constitute actual possession. Creech v. Jones, 5 Sneed [at page] 633.''

■ We are of the opinion that the defendant did take such possession as the property was capable of early in January 1937 and that such possession known to T. B. Northcut, was actual, adverse, open and notorious and has been continuous since January 1937 to the date of the filing of the bill herein on March 20, 1944.

In the case of Choate v. Sewell, 142 Tenn. 487, on page 492, 221 S. W. 190, the Court said:

"Many cases are referred to under the notes in the Code following this section, and they show that almost every form of possession has been adjudicated by this court, except the one in controversy here. The right of a parol vendor, or donor, to repudiate the parol sale, or gift, accrues immediately upon making it. Where the parol vendee, or donee, enters into possession with the knowledge of the parol vendor, or donor, claiming adversely to him and all the world, the above-quoted statute applies. It applies to all of the land embraced in the parol gift whether it is under inclosure or not. The statute runs against the right of repudiation. Adverse possession between the parol vendee and a stranger to the title is another question than adverse possession between the parol vendee and the parol vendor. The parol gift is voidable only and not void. The vendee is in possession as a purchaser and adversely to the parol vendor. Such adverse possession for seven years extingnishes the right of the parol vendor to have an action, either at law or in equity to repudiate his conveyance of the lands. This is the very language of the statute and we must give it such effect. The action of ejectment is a repudiation of the parol gift, but the action must be brought within the time limited by the statute.''

In the case of City Nat. Bank & Trust Co. of Miami, Florida, v. City of Knoxville, in 158 Tenn. 143, on page 145, 11 S. W. (2d) 853, the Court said:

"Section 2, c. 28 of the Acts of 1919, carried into Thompson's-Shannon's Code at section 4458, is as follows:

'' 'No person, or anyone claiming under him, shall have any action, either at law or in equity, for any lands, tenements, or hereditaments, but within seven years after the right of action has accrued.'

"Under the foregoing, a naked trespasser who may have taken and held possession of land, of another adversely for seven years, without any color or pretense of right, is protected in that possession to the extent of his inclosure. Dyche v. Gass' [Lessee], 11 Tenn. 397, 3 Yerg. 397; Wallace v. Hannum, 20 Tenn. [443,] 1 Humph. 443, 34 Am. Dec. 659; Hammett v. Blount's [Lessee,] 31 Tenn. [385,] 1 Swan 385.

"This possessory right, or defensive title as it is sometimes called, continues as long as the actual possession is maintained."

See also Kittel v. Steger, 121 Tenn. 400, 117 S. W. 500.

We therefore conclude that the possession of the defendant as shown by this record, while getting the house ready for occupancy by his family, amounted to such actual and adverse possession as to sustain his defense of adverse possession under the Section of the Code quoted above and that he has a possessory or defensive title and the first assignment of error must be sustained.

Under the facts of this case the equities are with the defendant. The only objection the complainant made to carrying out the trade was that she wanted $400 for the property instead of the $300 that her uncle had sold it for. On cross-examination the complainant testified in part as follows:

"Q. The only objection you made was that you should have $400, instead of $300, and that the property was worth that much. It was alright with you for your Uncle to have made the trade with Mr. Meeks if he had made it for $400.00 instead of $300.00? A. Yes, I objected for the reason that the property was a gap out of the other property, but I would not have objected to the sale of it if it had been for $400.00.

"Q. Were you basing your value of $400.00 on the value of the property at the time Mr. Meeks talked to you, or at the time your Uncle made the trade? A. At the time my Uncle made the trade, I would not have sold it for under $500.00 at that time, but he sold it for $300.00 and I said $400.00 striking a balance."

We will not discuss the remaining assignments:

In view of the fact that the defendant has paid into the office of the Clerk and Master the sum of $300, the cause will be remanded to the Chancery Court of Grundy County for further proceedings and an order directing this $300 to be paid over to the complainant or her solicitor of record for her.

The decree of the Chancellor granting the relief prayed in the original bill is reversed.

The original complainant will pay the costs.

Reversed and remanded.

Felts and Hickerson, JJ., concur.