IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 22, 2005 Session

## NORMA JEAN FORD GRIFFIN v. DONNA LESTER and the UNKNOWN HEIRS of ARTHUR JEAN HENDERSON (DECEASED)

An Appeal from the Chancery Court for Shelby County
No. 99-1073-3     D. J. Alissandratos, Chancellor

No. W2004-02072-COA-R3-CV - Filed November 30, 2005

This is a quiet title and ejectment action. The plaintiff filed this lawsuit to quiet title to residential property and obtain a court order requiring the defendant to vacate the premises. The defendant asserted adverse possession as an affirmative defense, and filed a counter-claim arguing the existence of a constructive trust. During the trial, the plaintiff testified about a conversation with the defendant's grandmother, deceased by the time of trial, in which the plaintiff agreed to permit the defendant's grandmother to stay in the house if she paid the note and maintained the property. The trial court entered a judgment in favor of the plaintiff and dismissed the defendant's counter-complaint. The trial court found that the plaintiff filed the lawsuit within the applicable limitations period, and that the evidence did not support the imposition of a constructive trust or any other equitable relief. The defendant appeals. We affirm.

**Rule 3 Appeal; Judgment of the Chancery Court is affirmed.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Brenda Oates-Williams, Memphis, Tennessee, for Appellant Donna Lester.

Elijah Noel, Jr., Memphis, Tennessee, for Appellee Norma Jean Ford Griffin.

### OPINION

The residential property at issue in this case, 1107 Rozelle in Memphis, Shelby County, Tennessee, was purchased in fee simple by James Ford ("Ford") in January 1968. Ford lived in the house at that address with Arthur Jean Henderson ("Henderson") and Henderson's granddaughter, Appellant/Defendant Donna Lester ("Lester"). They lived there as a family, although Ford and Henderson were never married. Ford died in January 1982, apparently without a will. Appellee/Plaintiff Norma Jean Ford Griffin ("Griffin") was the only child of James Ford and his sole surviving heir.

Both Henderson and Lester survived Ford. In the years following Ford's death, they continued to occupy the Rozelle property. They maintained the property and paid the monthly note, and the mortgage was eventually paid off. In 1998, Henderson died. Shortly after Henderson's death, Griffin contacted Lester about paying rent on the property. At that time, Lester asserted an ownership interest in the property. She refused to pay rent to Griffin.

On December 9, 1999, Griffin filed a complaint to quiet title and for ejectment in the Shelby County Chancery Court. In the complaint, Griffin claimed that she owned the Rozelle property in fee simple absolute and asserted that Lester's claim of an interest in the property constituted a cloud on the title. Griffin alleged that Lester was unlawfully withholding possession of the Rozelle property from Griffin, causing damages in the approximate amount of $50,000. Consequently, Griffin sought a declaratory judgment that Griffin held the title by fee simple absolute, and sought an order requiring Lester to vacate the premises and return possession to Griffin.

Lester filed an answer on February 23, 2000, asserting as an affirmative defense that Griffin was barred from bringing suit by a seven-year statute of limitations. Lester later filed a motion for leave to amend her answer and include a counter-claim The memorandum in support of the motion contained a number of factual contentions regarding Lester's purported interest in the Rozelle property. Lester asserted that, for fourteen years after Ford's death, she and Henderson jointly paid for the taxes, mortgage, and repairs on the Rozelle property. After Henderson's death in 1998, Lester maintained, she alone continued to pay those expenses. Lester alleged that Griffin waited until the mortgage debt was paid off in 1997 before attempting to retake possession of the Rozelle property. As such, Lester contended, Griffin was unjustly enriched and a constructive trust was created.

Attached to Lester's memorandum was an exhibit with copies of canceled checks dating from 1982 until 1997. The checks were made payable to Collateral Investment Corporation, paid monthly, and drawn on an account bearing the names of both Henderson and Lester. The memo line of each check read "For: James Ford." Lester later filed a counterclaim asserting a constructive trust.

In response, Griffin contended that she and Henderson had maintained a landlord-tenant relationship, terminable at-will.

A bench trial was held on May 19, 2004. Before the presentation of evidence commenced, the trial judge engaged in a lengthy colloquy with the attorneys in order to narrow the focus of the proceedings. Ultimately, the attorneys agreed that the only material fact in dispute was the year in which Lester's possession became adverse – 1982 or 1998.

Griffin testified on her own behalf. At the outset of Griffin's testimony, she was asked by her attorney about a conversation she had with Henderson shortly after Ford's death. As soon as Griffin began to testify that Henderson told her that she was afraid, Lester's counsel objected, asserting that Henderson's statements would be inadmissible hearsay. Griffin's attorney maintained that the statements would not be hearsay, or if they were hearsay, it would be "subject to the hearsay

exception as to statements against interests by the declarant." The trial court overruled the objection and allowed Griffin's testimony.

Griffin testified that, shortly after Ford's death in 1982, Henderson contacted Griffin and expressed fear that she, Griffin, would "put her out of the house." According to Griffin, she and Henderson reached an agreement whereby Henderson could stay in the house without paying rent to Griffin so long as Henderson paid the house note and "kept the house up." After Henderson died in 1998, Griffin said, she approached Lester about paying rent. Lester refused to pay rent. In 1999, Griffin asked Lester to sign a lease, and Lester refused. At that point, Griffin initiated the instant action to require Lester to vacate the premises.

Lester disputed the existence of any agreement between Griffin and Henderson. She testified that she was unaware of any conversation between Griffin and Henderson about the arrangement for payment of the house note in exchange for Griffin permitting them to stay in the house. Lester said that she and Griffin did not maintain a typical landlord-tenant relationship. Neither ever contacted the other about the property. Once the mortgage was paid in full, shortly after Henderson's death, Lester testified, Griffin contacted her about the property for the first time. Lester stated that, at that time, Griffin wanted to increase the rent to an amount twice that of the note payments. On cross examination, Lester admitted that, prior to 1998, she never had any discussions with Griffin in which Lester asserted any ownership interest in the Rozelle property.

On rebuttal, Griffin testified that, during the time period in question, she knew that other adults were residing in the house with Henderson, but considered them co-tenants. Ultimately, Griffin said, she considered Henderson to be the sole person responsible for upholding the tenant's end of the agreement. At the conclusion of the trial, the court took the case under advisement.

On May 27, 2004, the trial judge issued a written decision in favor of Griffin, and dismissed Lester's counter-claim. The trial court found that there was in fact an agreement between Henderson and Griffin, as Griffin described, and that Lester's possession of the property did not become adverse until she refused Griffin's request for rent in 1998. Consequently, the trial court ruled that Griffin's claim was not barred by the seven-year statute of limitation in T.C.A § 28-2-103. The trial court ruled that the evidence did not support the finding of a constructive trust and that the doctrine of laches was not applicable. Finally, the court ruled that Griffin held title in the Rozelle property in fee simple absolute, and that Lester was not entitled to continued possession of the property. From this order, Lester now appeals.

On appeal, Lester argues that the trial court erred in finding that Griffin consented to the continued possession of the property by Henderson and Lester after Ford's death. Lester asserts that the trial court erred in permitting Griffin to testify on Henderson's alleged statement that she feared that Griffin would put her out of the house. Lester also contends that the trial court erred in ruling that Griffin's quiet title and ejectment claims were not barred by the seven-year statute of limitations and the equitable doctrine of laches.

We review the trial court's findings of fact *de novo*, upon the record, with a presumption of correctness unless the preponderance of the evidence indicates otherwise. Tenn. R. App. P. 13(d). The trial court's rulings of law are reviewed *de novo*, with no presumption of correctness. ***Sallee v Barrett***, 171 S.W.3d 822, 825 (Tenn. 2005). Lester argues, on appeal, that the only evidence supporting the finding that Griffin gave her consent for Henderson to remain on the property was inadmissible hearsay. The trial court's rulings on evidentiary matters are reviewed *de novo*, with no presumption of correctness. ***Wallace v. State***, 2005 WL 292438 *4 (Tenn. Crim. App. Jan. 31, 2005). Under the Tennessee Rules of Evidence, unless it fits within a recognized exception, hearsay is not admissible at trial. Tenn. R. Evid. 802. Under the Rules of Evidence, "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). In the instant case, the context of Griffin's testimony on Henderson's statement indicates that Griffin did not seek to establish as fact that Henderson was in fact afraid. Rather, Griffin sought to establish Henderson's recognition that, after Ford's death, Griffin was the owner of the Rozelle home in which Henderson lived. Therefore, the statement by Henderson to which Griffin testified would not be hearsay.

In addition, even if the statement to which Griffin testified constituted hearsay, it would be admissible under an exception to the Rule excluding hearsay. Rule 803(3) of the Tennessee Rules of Evidence provides that "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition," is not excluded by the hearsay rule. Tenn. R. Evid. 803(3); ***see also Tennessee v. Harris***, 1997 WL 746021 *10 (Tenn. Crim. App. Dec. 3, 1997)(finding that testimony regarding a rape victim's fear of the defendant was relevant to the issue of sexual consent). Griffin's testimony, reciting Henderson's statements regarding her fear of being forced to leave the house, would fall within the exception in Rule 803(3).

Moreover, the only objection asserted by Lester's attorney was to Griffin's testimony about Henderson's fear. No objection was made to Griffin's testimony about the agreement reached between Griffin and Henderson. Griffin's testimony regarding the existence of an agreement was sufficient in and of itself to support the trial court's finding. Consequently, we cannot agree with Lester's argument that the evidence preponderates against the trial court's finding that an agreement existed between Griffin and Henderson, permitting Henderson to remain in the house so long as she paid the note and maintained the property.

Next, Lester contends that the trial court erred by finding that Griffin's consent permitting Henderson to remain in the house was also consent to permit Lester to stay on the property. As a result of this, Lester argues, the trial court erroneously concluded that there was no constructive trust.

A constructive trust generally arises despite the intentions of the parties. ***Livesay v. Keaton***, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980). It arises "against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal title to property which he ought not. . .hold and enjoy." ***Id.*** (citing ***Sanders v. Forcum-Lannom, Inc.***, 475 S.W.2d 172 (Tenn.

1972)).  From our review of the evidence, Lester failed to establish any of the elements of a constructive trust.  This argument is without merit.

Lester also argued that the trial court improperly applied the seven-year statute of limitations set forth in Tennessee Code Annotated § 28-2-103.  Lester argues that her financial contributions after Ford's death and prior to Henderson's death were assertions of her interest in the property, sufficient to constitute an open and adverse possession of the property and put Griffin on notice.  Therefore, according to Lester, Griffin waited too long to bring the action to recover the Rozelle property.

Under Tennessee's adverse possession statute, the owner of real property must bring a suit to recover land "within seven (7) years after the right of action accrued."  T.C.A. § 28-2-103(a).  To determine when the statute began to run, it is necessary to determine when the landowner's cause of action accrued.  Tennessee caselaw is clear that the cause of action accrues at the time the possession became adverse.  *Moffitt v. Meeks*, 199 S.W.2d 463, 465 (Tenn. Ct. App. 1946).  Thus, an action under the statute will not be barred if the possession of the land was permitted by the owner.  *Menefee v. Davidson County*, 260 S.W.2d 283, 285 (Tenn. 1953).

Here, the trial court found that Lester's possession of the property did not become adverse until 1998, when she refused Griffin's request that she  pay rent.  This finding is based on the trial court's finding that Griffin's testimony, establishing an agreement between Griffin and Henderson, was credible.  The trial court is in the best position to assess the demeanor of the witnesses when testifying, and on appeal we accord great deference to the trial court's determination of credibility.  *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991).  With appropriate deference to the trial court's findings on credibility, we must conclude that the evidence does not preponderate against the trial court's finding on when Griffin's cause of action accrued.  Consequently, the statute of limitations did not begin to run until 1998, *see Moffitt*, 199 S.W.2d 463, and Griffin filed suit less than a year later.  Accordingly, we affirm the  trial court's ruling that the statute of limitations did not bar Griffin's lawsuit.

Finally, Lester argues that the trial court erred in rejecting her defense based on the doctrine of laches.   Lester asserts that she was prejudiced by Griffin's delay in bringing suit, as well as Griffin's failure to tell Lester of Griffin's ownership of the property during the sixteen years in which Lester resided with Henderson on the property.   Lester contends that the weight of the evidence is against a ruling that laches are not appropriate in this case.  We disagree.

A trial court's decision on whether to apply the doctrine of laches is reviewed under an abuse of discretion standard.  *John Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 715 S.W.2d 41, 46 (Tenn. 1986).  Although there is "no hard and fast rule" for the application of the doctrine of laches, laches will generally preclude relief in lawsuits in which a significant lapse of time or loss of evidence "render uncertain the ascertainment of truth, and make it impossible for the court to pronounce a decree with confidence."  *Id.*  Such is not the case here, and the trial court did not abuse its discretion in declining to apply the doctrine of laches.

The decision of the trial court is affirmed. Costs on appeal are taxed to the Appellant Donna Lester and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE