Opinion of the court delivered by
Judge Catron.
One question in this cause is, as to the admissibility of Higgins’ testimony. He proved that Wilkerson told him that he settled upon the land by the permission of John Don-elson; the evidence was objected to as hearsay, but was received by the court. I am inclined to the opinion, that the court acted correctly in permitting the evidence to go to the jury; it was offered as a mere fact connected with the matter in dispute, not calculated to affect Doak, fur *252 ther iban file fact of Wilkerson’s being Donelson’s tenant would affect him. It was a part of the res gesta, and in most cases, is almost the only means of ascertaining the qu0 animo with which possession oflands is taken or held. The simple fact of Wilkerson’s being in possession, would leave it uncertain, whether he claimed for Donelson or Doak, or cither. The authorities when examined, will, 1 think, sustain this position. (Starkie Ev. part 1. sec. 28, page 47, 8; part 2nd. sec. 33, page 53. 1 Phillips Ev. 182. Davis v. Pierce, 2 Term Rep. 53. 1 John Rep. 163. 4 John Rep. 231. 4 Taunton’s Rep. 16.
But as this point is unnecessary to be decided, and as .Judge Peck differs with me in opinion upon this point, I will not be positive how it is. 1 have merely stated my impression from the authorities.
The next point is, did the circuit court charge the jury correctly' as to the character of the possession holden by the tenants on the land, both parties claiming them, and each relying upon the act of limitations in aid of their respective titles? The facts arc as follows: Wiikerson went upon the land in dispute in the fall of 1813, and made a small improvement by building a cabin, and clearing a turnip patch, this lie did by the permission of Donelson; Wiikerson remained on the land two years or more, and then applied to Doak for a lease, and got one, assigning as a reason, that he apprehended Doak had the better title, and that he had applied to Donelson for a written lease which lie refused to give; but there is no evidence, that Donelson had any knowledge of this, or any reason to believe that Wiikerson claimed Doak as his landlord. What notorious and adverse holding against his landlord,will amount to an ousier when committed by n tenant, and thereby acquire to the tenant himself, a ti* tie under the act of limitations, we will not pretend to state., as it would he a mere dictum upon a most abstruse and delicate subject; wc can only say that it appears clear from the evidence, that nothing transpired between Wiikerson and Donelson, of a notorious, adverse holding out on the part of -the tenant, Wiikerson,.to change the *253 character of the original possession, as between the parties. (Adams on Ejectment 56.
I wish not to be understood as intimating that a tenant going in under A, can under any circumstances, renounce A’s. title, claim to hold under B, and by this means form a bar in favor of the outstanding title of B. .This point it is unnecessary to decide, but 1 believe the course of legal thinking in Tennessee, has been, that a tenant cannot be permitted to set upan outstanding title in a third person, to the prejudice of the title under which he entered at any time; nor has he power whilst continuing in possession to change its original character, so as to confirm the outstanding title of a third person by the statute of limitations; that the contractor the third person is a dishonest tampering with the tenant, and can avail nothing against the first landlord. Such no doubt was the opinion of the venerable and distinguished circuit judge who presided upon the trial of this cause below; which doctrine he extended to Whitworth and Pugh, supposing them sub-tenants under Wilkerson, without taking the distinction, that under the circumstances no privity could possibly exist between them and Ponelson.
We consider the law to be, and it has often been decided in this State, that, where A enters as tenant at will of B, and conveys to C by deed purporting to be in fee, under which Centers and holds possession openly and notoriously for himself for seven years, either by himself or his tenants, the statute confirms the title of C, because he entered as a wrong doer, at first, and held possession under his deed adversely to B’s. title.
In this case, Higgins proves, that in the fall of 1821 or the first of 1822, the defendants went into possession of the land, that four, five or six years before, Whitworth and perhaps Pugh, were in possession of the land claiming under Doak, that either Whitworth or Pugh had purchased the lease Wilkerson had taken from Doak in 1815 or 16, and under which Wilkerson had held the land from the time the lease was taken, until he sold it.
The tenancy of Wilkerson was a permissive occupancy *254 of the land, and at most a mere tenancy at will. (Adams on Eject. 10, 2, 3, 4. The relation of landlord and tenant did exist between him and Donclson, sufficient to have formed a bar in Donclson’» favor had he continued seven years on the land. The same is true of the possession of Whitworth and Pugh as to Doak.
Wiikerson held as tenant at will under Donelson, had no estate in the land, and could not transfer his possession to another, because he could make no lawful contract in reference to it; the very nature of his occupancy precluded all idea of dealing with it as an interest in the land, or of a sub-tenancy under him. No notice there/ore, can be taken of any contract between him and Whitworth or Pugh; as it was clearly an act of desertion o.n his part, and terminated his tenancy. (2 Blk. Com. 146.
The moment Wiikerson left the possession it was vacant so far as Donclson was concerned, and Whitworth and Pugh could rightfully enter as Doak’s tenants, and hold adversely to Donelson. No notice to him of adverse holding was necessary because he knew they were not his tenants, he had not put them into possession; prima facie, they were intruders on his land, or, in other words, Wiikerson had no interest in the premises that authorized him to create any privity between Whitworth and Pugh and Donelson; hence the-relation of landlord and tenant, did not, nor could not exist. They went in avowedly as the tenants of Doak, held openly and notoriously under him, and consequently adverse to Donclson’s title, to the doing of which no legal objection stood in their way.
The judge charged the jury, “that the inferior title, if confirmed by seven year’s adverse possession gave the plaintiff the right to recover.” This is clearly the law. It was further charged, “he has proved by a man that he leased under him, and then had seven year’s possession.” It is then remarked that the evidence was objected to as hearsay, but.the court thought it competent. The court must have connected the tenancies of Wiikerson, Whit-worth and Pugh, as one holding for Donelson, or he could not have told the jury that Donelson had proved he leas *255 ed to a man, and then bad seven year’s possession. Wilkerson could not have had possession more than five years at most from the proof. Be that as it may, thejury were plainly and explicitly told by the court, that from the proof Donelson had acquired a good title by force of the statute of limitations, which was an end to the controversy in that court, and was no doubt so intended by the court. In this, tor the reasons before given we think he was clearly in error, and forasmuch as Doak may be enabled to defend himself by the bar formed by (he act of limitations, we reverse the judgment and order the cause to be retried.
Judgment reversed.