# HOOD v. CRAVENS et al.—218 S. W. (2d) 71.

Middle Section. Oct. 30, 1948.

Petition for Certiorari denied by Supreme Court, March 11, 1949.

W. C. Smith and J. B. Reagan, both of Jamestown, for complainant.

A. R. Hogue, of Jamestown, for defendants.

FELTS, J. This is an ejectment suit for about 200 acres of land in Fentress County. The Chancellor held that complainant's suit was barred by seven years adverse possession by defendant Nova Cravens and those under whom she claimed, and he dismissed the bill. Complainant appealed and has assigned a number of errors upon the Chancellor's decree.

This 200 acres is a part of a tract of 500 acres granted by the State in 1874 to Jeremiah Hood. He lived on this land till 1889, when he died intestate. His widow, Margaret Hood, and their children continued to live there. Complainant was one of these children. He acquired this 200 acres in a division of the land with his sister, Sarah Jane Hood Choate, and by deed from his brother, E. E. Hood.

This division between him and his sister appears to have been made about 1911 and this deed of E. E. Hood to complainant was made in 1917. Up to that time he lived on this land with his mother, Margaret Hood, and his brother, Jere Marshall Hood. In 1917 he went away and left his mother, Jere Marshall Hood, and the latter's wife, Dizzie Hood, living on this land. They continued to live there until Margaret's death in 1930.

It appears that Jere Marshall Hood was an illegitimate child of Jeremiah and Margaret Hood—was born before their marriage. But he was reared by them as part of the family, and, as stated, he and his wife continued to live with his mother on this land long after the other children had left and he and his wife continued to live

there after the death of his mother in 1930. He sometimes went by the name of Jeremiah Hood and sometimes as Jere Marshall Hood. While because of his illegitimacy he had no actual interest in the land, he seems to have set up claim to it after his mother's death. On May 30, 1935, he (signing his name by mark as "Jeremiah Hood") and his wife, Dizzie Hood, made a general warranty deed purporting to convey the fee simple estate in this land to James Beaty. This deed properly described the land by courses and distances. It was recorded in Fentress County June 5, 1935.

On July 24, 1945, James Beaty by general warranty deed conveyed this land to Dizzie Hood and her daughter, Eunice Hood. On May 8, 1946, they conveyed it by a like deed to defendant Nova Cravens. She claimed her title had been perfected by adverse possession by herself and those under whom she claimed.

Complainant testified that Jere Marshall Hood occupied the land as his tenant and held possession for him. But Dizzie Hood denied this, and said that Jere Marshall Hood claimed the land himself. The proof for defendant was that after making the deed to Beaty, Jere Marshall Hood occupied the land as tenant of Beaty until January, 1938; that he and his wife then moved and he died in 1940; and that when they left, James Beaty continued to maintain possession of this land by another tenant, Zelph Wright, for one year and thereafter by another tenant, Dillard Atkins, who has occupied the property ever since.

The land was mostly unenclosed woodland but there was a house on it and some ten or twelve acres cleared and enclosed by fences. These tenants of Beaty occupied the house till it was burned, pastured the land, cultivated the fields, and kept up the fences. The proof is that

Beaty, as long as he owned the land, maintained adverse possession of it through his tenants and that such possession was thereafter maintained by the successive owners up to the time this case was tried, Dillard Atkins testifying that he was then a tenant and holding possession for defendant Nova Cravens.

Complainant insists that he had left Jere Marshal. Hood on the land as his tenant, and he cites a number of cases holding that where a stranger enters by collusion with a landlord's tenant, the statute of limitations does not begin to run against the landlord until he has been given actual knowledge of such collusion—until acts are done which are notorious enough to amount to an actual ouster of his possession. And he insists that there were no such acts to start the statute running seven years before the bringing of this suit on November 2, 1946.

 It is true that one holding for another, such as a tenant for his landlord, or a tenant in common for his cotenants, cannot hold adversely to such other while that relation exists. But he may throw off that relation, may work an ouster of his landlord or of his co-tenants; and upon such an ouster the statute does begin to run. Where a tenant makes a deed purporting to convey the land to another, or where a tenant in common makes a deed purporting to convey the entire estate in the land, this amounts to an actual ouster and disseizin which the landlord or the cotenant is bound to notice. Doak v. Donelson's Lessee, 10 Tenn. 249, 254, 24 Am. Dec. 485; Weisinger v. Murphy, 39 Tenn. 674, 679; Jones v. Mosley, Tenn. App., 198 S. W. 2d 652, 655.

"We consider the law to be, and it has often been decided in this state, that, where A enters as tenant at will of B, and conveys to C by deed purporting to be in fee, under which C enters and holds possession openly

and notoriously for himself for seven years, either by himself or his tenants, the statute confirms the title of C, because he entered as a wrongdoer at first, and held possession under his deed adversely to B's title.'' Doak v. Donelson's Lessee, supra, Tenn. 249, 253, 24 Am. Dec. 485.

''. . . On the contrary, it seems to be well settled in this State and elsewhere, that if one tenant in common assume to convey the entire land, or any specific part of it, by metes and bounds, his deed will be a color of title, and possession under it for seven years, will be adverse to the right and title of the cotenants, and bar their action to recover the land conveyed. It is an actual ouster and disseizin of the co-tenant, which he is bound to notice; and in order to create this adverse relation, no formal, or other notice from the vendee in possession, is necessary. Waterhouse v. Martin, Peck, 392, 411; Thurman v. Shelton, 10 Yerg. 383, 388; Ang. on Lim. 97, 98; Higber v. Rice, 5 Mass. [344], 352, [4 Am. Dec. 63]; [Jackson ex dem Krom v. Brink], 5 Cow. [N. Y.], 483; Cullen v. Motzer, 13 Serg. & R. [Pa.], 356 15 Am. Dec. 604; 2 Greenl. on Ev., secs. 430, 557.'' Weisinger v. Murphy, supra, 33 Tenn. 674, 679.

██ Upon these authorities we think that, even though Jere Marshall Hood had been a tenant of complainant, his making and the recording of this deed, purporting to convey the fee simple estate to James Beaty, amounted to an actual ouster and disseizin of complainant, which started the running of the statute, Code section 8582. The recording of his deed, accompanied by the possession of James Beaty by his tenant, Jere Marshall Hood, was notice to complainant of the adverse character of Beaty's possession under this deed.

Weisinger v. Murphy, supra; Southern Iron & Coal Co. v. Schwoon, 124 Tenn. 176, 215, 216, 135 S. W. 785.

Complainant, however, insists that this deed was not entitled to registration, and not notice to him, because the acknowledgment of it was void. It is argued that Jack Green, who took the acknowledgment as Notary Public, was not properly authorized to act as such Notary.

The record shows that Jack Green was duly elected by the County Court as a Notary Public for Fentress County, and was commissioned as such by the Governor; and that he took the oath of office and gave bond. The bond had on it the word "Approved" but was not signed by the approving officer (Code sec. 1824). Nor did the county court clerk make a minute entry showing the qualification of the Notary Public. But, as the Chancellor held, these omissions did not invalidate the bond or make the Notary's election invalid. Code sections 1836, 1837; McLean v. State, 55 Tenn. 22.

Complainant also contends that the color of title under which defendant claimed did not exist and continue for the full seven years, as required by Code section 8582; that the color of title was divested out of James Beaty by a back tax sale of the land April 4, 1940, and by another such sale May 15, 1943; and that these divestitures destroyed the adverse possession.

If the color of title was divested before the lapse of seven years this would not destroy the adverse possession. Its only effect would be to reduce the constructive possession to actual possession—to reduce it from the whole extent of the boundaries to that actually held by enclosures or otherwise. Thomasson's Lessee v. Keaton, 33 Tenn. 155.

But we think there was no such divestiture before the lapse of seven years. The first tax sale was in the

case of State v. Allred, 177 Tenn. 61, 146 S. W. 2d 138. That sale was made after the Supreme Court had dismissed that bill. The Chancellor properly held that the sale was void and had no effect in the present case. See Williams v. Cravens, 28 Tenn. App. 541, 191 S. W. 2d 942. The second tax sale was made in the case of State v. John Anderson et al., the land was sold to the State and the sale confirmed May 15, 1943. On June 6, 1946, the State by deed of its commissioner of Finance and Taxation conveyed the land to Nova Cravens.

As we have seen, the registered color of title, with the actual adverse possession thereunder, began June 5, 1935, the date of the recording of the deed of Jeremiah Hood and wife to James Beaty. The requisite seven years of adverse possession under such color of title expired June 6, 1942. So the statute had run before this tax sale of May 15, 1943. The effect of these seven years' adverse possession under the registered color of title was to extinquish complainant's right and transfer his title to James Beaty. Earnest v. Little River Land & Lumber Co., 109 Tenn. 427, 75 S. W. 1122; Southern Iron & Coal Co. v. Schwoon, 124 Tenn. 176, 216, 135 S. W. 785. Nova Cravens acquired this complete and perfected title by the deeds to her.

Complainant urges some other matters which upon full consideration we find to be without merit. The decree of the Chancellor is affirmed. The costs are adjudged against complainant-appellant.

Howell and Hickerson, JJ., concur.