M.C. COOKE, Jr., Frances Dillard
James and W.W. Dillard,
Plaintiffs-Appellants,

v.

Albert SMITH, Lucille Smith, et al.,
Defendants-Appellees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

June 30, 1986.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 8, 1986.

H. Houston Gordon, Covington, for plaintiffs-appellants.

C. Barry Ward, Paul R. Lawler, James S. Gilliland, Memphis, for defendants-appellees.

CRAWFORD, Judge.

Basically, this is a suit in ejectment and to quiet title to real estate in the Mississippi River. The involved land mass is now situated across a chute, just east of Osceola, Arkansas. It originally was close to the Tennessee shore and the main channel of the river was toward the right descending bank against the Arkansas shore. Due to changes in the channel, the island appeared to "migrate" across the river. In *Tennessee v. Arkansas*, 454 U.S. 351, 102 S.Ct. 962, 70 L.Ed.2d 539 (1981), the United States Supreme Court held that the land was part of Tennessee and established the boundary line between the two states. The impact of such a decision on record titles,

combined with the nature of the land involved, provides a natural catalyst to litigation of this type.

The plaintiffs are M.C. Cooke, Jr., Francis Dillard James, and W.W. Dillard. M.C. Cooke, Jr., is an heir of M.C. Cooke, Sr., and by virtue of assignments from the other heirs of M.C. Cooke, Sr., is, for all intents and purposes of this lawsuit, the sole surviving heir of M.C. Cooke, Sr. Francis Dillard James and W.W. Dillard are grandchildren, and the sole surviving heirs, of W.G. Cooke. The defendants are Albert Smith and wife Lucille Smith. The trial court's decree dismissed plaintiffs' complaint for ejectment and vested title to the disputed land in defendants Albert Smith and Lucille Smith by virtue of adverse possession.

It was plaintiffs' theory, and proof was introduced in support thereof, that this litigation involved two distinct land masses, one known as Emerson Bar and one known as Island 30. River guides from the early 1800's indicated that Island 30 was a part of the State of Tennessee and Emerson Bar was first noted on a river map in about 1921 as a small island near the Arkansas shore line. Emerson Bar was considered to be in Arkansas and was owned by M.C. Cooke, Sr., until 1954, when he conveyed the land by Arkansas warranty deed to Albert Smith and T.B. Renfro. (In 1955, Smith obtained Renfro's interest in the land.) A deed description described the land as containing 106.53 acres, plus accretions. At the time of the conveyance Emerson Bar lay to the south and west of Island 30 which was then located near the Arkansas shore and a chute or strip of water separated Emerson Bar and Island 30.

Plaintiffs used the register's records in Lauderdale County, Tennessee, to establish the record title of Island 30. By warranty deed dated October 8, 1906, W.G. Cooke and M.C. Cooke, Sr., obtained title to the north half of Island 30, containing approximately 398 acres. Although there was evidence of trust deeds from some of the Cooke ancestors, the record title to the

south half of Island 30 was not deraigned to plaintiffs and they concede that there is a break in the recorded chain of title for the southern part of Island 30.

In 1958, M.C. Cooke, Sr., being 89 years old and blind, conveyed by quit claim deed to Albert Smith an additional 600 plus acres in Mississippi County, Arkansas, that included a reference to Island 30.

In summary, it was plaintiffs' contention that Albert Smith acquired Emerson Bar containing 106.53 acres and that M.C. Cooke and W.G. Cooke continued as owners of Island 30, that by virtue of erosion on the northern end of Island 30 and accretions to the southern end of Island 30, the Emerson Bar tract was enclaved by Island 30, that the 1958 quit claim deed from Cooke, Sr., to Smith was procured by fraud and that the defendant had absolutely no color of title to anything other than the 106.53 acres described in the deed to the Emerson Bar land. It should be noted at this point that both parties concede that because of the Supreme Court's decision in *Tennessee v. Arkansas, supra,* the Arkansas deeds to Tennessee land are void. We note that in 1981 after the Supreme Court's decision, Smith had his Arkansas deeds recorded in the State of Tennessee, but admittedly no claim is made that Smith is relying on adverse possession by virtue of recorded color of title.

Plaintiffs have presented five issues for review which we quote from plaintiffs' brief:

1. The chancellor erred in finding that "Island 30" and "Emerson Bar" were one and the same formation, such being totally contrary to the proof in the cause and in conflict with the express findings of the United States Supreme Court.

2. The chancellor erred in adjudging title to "Island 30" to be in defendants Smith when defendants' claim of ownership failed because:

(1) His "deed did not encompass "Island 30;"

(2) He failed to establish title by adverse possession as a matter of law.

(3) He failed to pay taxes for a period of 20 years;

(4) His "deed" and possession have no application to the heirs of W.G. Cooke;

3. The chancellor's decree applying T.C.A. § 28–2–110 to plaintiffs ignores the fact that plaintiffs' predecessors in title and plaintiffs had no notice and were unaware of the defendant tax assessor's predecessor in office's surreptitious removal of "Island 30" from the tax rolls and subsequent attempt by the tax assessor to purchase such lands at a public tax sale.

4. The chancellor's decree is in error in that the twenty year period has been tolled.

5. T.C.A. § 28–2–110 is inapplicable because, during the pendency of Arkansas v. Tennessee, the lands in question were not "subject to assessment."

For reasons hereafter evident, we will consider plaintiffs' second issue first.

After a lengthy trial with voluminous testimony and numerous exhibits, the trial court filed an opinion setting out his findings of fact and conclusions of law in which he stated:

The contentions of the parties, while numerous and complex, sort down to the relatively simple issues of whether the plaintiffs can establish base title to the formation and, *even if they can, whether the defendants can establish paramount title by adverse possession to defeat the plaintiffs' claim.* (Emphasis added).

Plaintiffs assert that defendants' "deed did not encompass Island 30" because the deed is void since the conveyed land is described as being in the State of Arkansas when, in fact, it is in the State of Tennessee and further that the description purports to convey only Emerson Bar and not Island 30. It appears that plaintiffs' argument is immaterial because the chancellor did not premise his holding on defendants' adverse possession under color of title. In order to vest title by virtue of adverse possession under color of title, assurance of title must be recorded in the register's

office for the county in which the land lies for a seven year period. *See* T.C.A. § 28–2–101 (1980); *Moore v. Brannan,* 42 Tenn.App. 542, 304 S.W.2d 660 (1957). It is uncontroverted that Smith's deed was not recorded in Lauderdale County, Tennessee, until 1981.

Plaintiffs assert that the chancellor erred in sustaining Smith's claim of adverse possession for the following reasons which we quote from plaintiffs' brief:

1. He (Smith) did not pay taxes on the land for a continuous period of 20 years and his claim under adverse possession is, therefore, barred;

2. The Defendant Smith can be no more than a co-tenant with the heirs of W.G. Cooke and, therefore, can not adversely possess against them absent an actual ouster or disseisin;

3. The Defendant Smith's possession of the lands in question was not so open, notorious, and adverse as to give him a defensive title. Indeed, the island was, for many years thought to be unuseable and was totally surrounded by water and trees. Indeed, as shown by every aerial photograph exhibited, the island mass's exterior is still totally surrounded by large trees and obscured from view of the mainland and has been so surrounded since 1954. (See Exs. 3, 4, 6, 7, 8, 15–25) and the only way to get to the island lands is by boat;

4. The Defendant Smith never gave the Cooke family or their predecessors in title, W.G. Cooke and/or M.C. Cooke, Sr., any notice of his adverse claim at all.

■ Plaintiffs contend that T.C.A. § 28–2–110(a) should be applied to prevent a finding of adverse possession on behalf of defendants and rely upon *Tidwell v. Van Deventer,* 686 S.W.2d 899, 902–903 (Tenn. App.1984), in support thereof. We disagree with plaintiffs' assertion. T.C.A. § 28–2–110(a) (1980) provides:

*Action barred by nonpayment of taxes.* —(a) Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the

same having been subject to assessment for state and county taxes, who and those through whom he claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state; ...

The Court in *Tidwell, supra,* merely held that the statute would act as a bar to bringing a suit to remove a cloud on the title. The important thing is that the statute acts as a bar to "bringing any action." In *Burress v. Woodward,* 665 S.W.2d 707 (Tenn.1984), our Supreme Court made it quite clear that the statute is not applicable, as asserted by plaintiffs. The Court said:

It should be noted that as a statute of limitations, T.C.A. § 28–2–110 does not affect title or destroy rights, it merely restricts the rights of the property holder who falls within its purview. Plaintiffs are restricted under the statute from bringing suit because of their failure to pay taxes for a period of more than twenty years. However, as noted in *Layne v. Baggenstoss,* 640 S.W.2d 1, 3 (Tenn.App.1982), "[n]othing in § 28–2–110 prevents Defendants from defending their title. The failure to pay taxes for twenty years does not automatically cause Defendants to be ejected."

*Id.* at 709.

Next plaintiffs assert that Smith can be no more than a co-tenant with the heirs of W.G. Cooke and therefore cannot hold adversely to them in the absence of actual ouster or disseisin. Again, we must disagree with plaintiffs' assertion. In the first place, plaintiffs have consistently taken the position that defendant Smith never obtained any deed to the Tennessee land embraced in the deed to W.G. Cooke and M.C. Cooke, Sr. The proof at trial indicates this to be correct. In any event, we will address plaintiffs' assertion in this regard along with our discussion concerning plaintiffs' assertion as to Smith's adverse possession in general.

To constitute adverse possession the adverse claimant must exercise only such use and occupation of the land as the land is susceptible of by its nature and character. *Moffitt v. Meeks,* 29 Tenn.App. 609, 615, 199 S.W.2d 463, 466 (1946); *Derryberry v. Ledford,* 506 S.W.2d 152, 157 (Tenn.App.1973). The acts relied upon must be of such a character as to leave no doubt of the claim of ownership by adverse possession and to give notice to the public of the possession and the claim. *Pullen v. Hopkins, Clark & Co.,* 69 Tenn. 741, 747 (1878).

The chancellor found that the land in question has been occupied and farmed to its fullest extent by defendant Smith or his lessees continuously since 1954, that Smith has claimed and treated the island as his own, constructed improvements thereon, exercised complete dominion and control over the entire property under claim of ownership, has been generally recognized from 1954 forward by people in the community to be the owner of the property and continuously paid the Arkansas taxes on the property until the land was declared to be a part of the State of Tennessee.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

From our review of the record, the evidence does not preponderate against the chancellor's findings concerning Smith's possession of the land in question; to the contrary we feel compelled to say that the evidence preponderates in favor of the chancellor's findings. The record indicates that since 1954 Albert Smith has been in open, actual, notorious, continuous, hostile, exclusive, adverse possession of the island, without any claim of ownership from anyone else. The evidence indicates that the

land was used agriculturally for crops or grazing to the entire extent possible, and as land was cleared it was in turn placed to such use. The forest lands were cut, and the land was posted. Lucille Smith testified that since her marriage to Albert in 1962, she has participated in the farming operation.

As noted, plaintiffs assert that Smith is a co-tenant with the heirs of W.G. Cooke and, therefore, cannot hold adversely to them. Even if we concede that Smith was such a co-tenant, (the concession is only for the purpose of addressing plaintiffs' assertion) we find plaintiffs' position untenable. In *Hood v. Cravens*, 31 Tenn.App. 532, 218 S.W.2d 71 (1948), the Court stated:

It is true that one holding for another, such as a tenant for his landlord, or a tenant in common for his cotenants, cannot hold adversely to such other while that relation exists. But he may throw off that relation, may work an ouster of his landlord or of his co-tenants; and upon such an ouster the statute does begin to run. Where a tenant makes a deed purporting to convey the entire estate in the land, this amounts to an actual ouster and disseizin which the landlord or the cotenant is bound to notice. *Doak v. Donelson's Lessee*, 10 Tenn. 249, 254, 24 Am.Dec. 485; *Weisinger v. Murphy*, 39 Tenn. 674, 679; *Jones v. Mosley*, Tenn. App., 198 S.W.2d 652, 655.

*Id.* at 536, 218 S.W.2d at 72–73. In *Moore v. Cole*, 200 Tenn. 43, 289 S.W.2d 695 (1956), our Supreme Court clarified the statement in *Hood* by noting that in both *Hood* and *Weisinger v. Murphy*, 39 Tenn. 674 (1859), the tenant in possession conveyed to another who immediately took possession claiming the land as his own. In *Moore*, our Supreme Court stated:

These cases clearly come within the rule, "that where one of several cotenants conveys the joint estate by an instrument purporting to vest the fee to the entire property in the grantee, *and the latter*

*enters*, asserting open and exclusive ownership thereof, in severalty, the co-tenant not conveying is deemed to be ousted, and, on the termination of the statutory period, title by adverse possession becomes vested in the grantee." 27 A.L.R. 8, 10.

*Id.* 200 Tenn. at 50, 289 S.W.2d at 698.

In the case at bar, the proof is more than abundant that Smith and his tenants took possession of the land in question under claim of ownership and continued in such possession through the time this suit was filed.

Plaintiffs also contend that the W.G. Cooke heirs never had any notice of Smith's possession. The record indicates that for many years the people in the area generally recognized the land as Albert Smith's land and an article appeared in the local newspaper concerning Smith's possession of the property. It is significant to note that there was no proof introduced in this case of any activity on the part of the W.G. Cooke heirs concerning this property, until after this lawsuit was filed. If the W.G. Cooke heirs had made any effort, actual knowledge of Smith's adverse possession could have been imparted to them. Smith's acts were proven in the case to be overt, notorious and sufficient to give notice to all in the area that he was claiming ownership of the property involved. Certainly, the W.G. Cooke heirs were charged with such notice. *See Wallace v. McPherson*, 187 Tenn. 333, 214 S.W.2d 50 (1947).

The chancellor held that by virtue of over 20 years adverse possession, title vested in Albert Smith and his wife Lucille Smith.[1] It is significant that Lucille Smith was not a party to any deed from Cooke which indicates to us that the trial court did not premise his decision on color of title in any respect. Continuous adverse possession of land for 20 years under claim of right legally vests title in the possessor. *See Keel v. Sutton*, 142 Tenn. 341, 219 S.W. 351 (1919); *Preston v. Smith*, 41

---

1. We note that no one complains of the joint vesting of title, so with the parties' acquiescence we will consider the trial court's findings regarding possession to apply equally to Lucille Smith.

Tenn.App. 222, 293 S.W.2d 51 (1956). The trial court further noted that the defendants' proof of adverse possession established a defensive title under T.C.A. § 28–2–103(a) (1980),[2] and thus that plaintiffs' action against defendants was barred. We concur in both holdings of the trial court.

In view of our concurrence with the trial court's decree barring plaintiffs' action by virtue of T.C.A. § 28–2–103 (1980) and vesting title in Albert Smith and Lucille Smith by virtue of 20 years adverse possession, it is not necessary that we consider the other issues presented for review. Accordingly, the trial court's judgment is affirmed, costs are assessed against the appellants and this case is remanded for such further proceedings as are necessary.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.

**2.** (a) No person or anyone claiming under him shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.