IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 6, 2012 Session

## EUGENE WILKERSON v. CLAUDE B. McCOY, ET AL.

**Appeal from the Chancery Court for Union County**
**No. 4636     Billy Joe White, Chancellor**

**No. E2011-01794-COA-R3-CV - Filed July 26, 2012**

The appellees claim ownership to two tracts of land listed as parcels 4.00 and 4.01 on the Union County Tax Map. They assert ownership through adverse possession as a result of members of their family allegedly farming and paying taxes on the parcels since 1917. The appellant was a bona fide purchaser of parcel 4.00 in 2003. The appellees filed a complaint to quiet title to determine ownership of the land; the appellant countered with a complaint for a declaratory judgment. The trial court consolidated the actions and concluded that the appellees held title to the parcels by adverse possession. The appellant appeals. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reverse; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Darren V. Berg, Knoxville, Tennessee, for the appellant, Eugene Wilkerson.

Glenna W. Overton, Knoxville, Tennessee, for the appellees, Claude W. McCoy & Helen B. McCoy.

## OPINION

### I. BACKGROUND

In 1917, George McCoy, the grandfather of appellee Claude McCoy, purchased the land at issue -- parcels 4.00 and 4.01 on the Union County Tax Map. Seven years later, in 1924, as a result of his failure to satisfy a debt to Elvin Branum, a judgment was entered against George McCoy. To satisfy the judgment, a court ordered the subject land sold. At

the judicial sale, Elvin Branum bought the land. He received from the sheriff a deed containing the following language:

> I L.B. Hutchison Sheriff . . . hereby transfer and convey unto the said Elvin Brannum, and his heirs and assigns forever, all the right, title, and interest the said George McCoy has to said tract of land of 20 acres more or less, . . . TO HAVE AND TO HOLD the same unto the said Elvin Brannum, his heirs and assigns, forever, in as full and ample a manner as I, as Sheriff, can or ought to convey but no further or otherwise.

Although George McCoy and his wife, Rosette Branum McCoy, no longer held legal title to the property, they continued to reside on the land until their deaths. According to the deposition testimony of Leon Branum, the son of Elvin Branum, his father allowed George and Rosette to stay on the property because Rosette was Elvin's cousin. George McCoy died in 1948; Rosette McCoy died in 1956.

In the Branum chain of title, the land passed in 1956 from Elvin Branum and his wife, Gertrude Branum, to his son, Herbert Carson Branum and his wife, Mildred Long Branum. In 1974, Herbert and Mildred transferred the land to Herbert's brother, Leon. Two years later, as part of a divorce settlement, Leon transferred the land to Scharlene Oney Branum. Mrs. Branum eventually sold the property to the appellant, Eugene Wilkerson, in 2003.

Soon thereafter, Claude McCoy and his wife, Helen B. McCoy ("the McCoys"), filed a complaint against Mr. Wilkerson seeking to quiet title in the property. Mr. Wilkerson subsequently filed a complaint for declaratory judgment.

The McCoys asserted that during the time frame from 1924 to 1948, the McCoy family regained ownership of the land through adverse possession. Subsequent to that period, Ruby McCoy, George and Rosette's daughter-in-law, continued to reside on the property until 1985.[1] The McCoys noted that title to the land obtained by adverse possession was conveyed by the McCoy heirs pursuant to a deed to Myrtle Small, a daughter of George and Rosette McCoy, in July 1985.[2] In his deposition, Claude McCoy stated that his aunt Myrtle "bought all the heirs out." Claude related that he acquired title to the land at issue

---

[1]The record reveals that a Mossy McCoy, a daughter of George and Rosette McCoy, also resided on the land during the period after the deaths of her parents.

[2]The McCoys related that the deed is recorded in Union County's Warranty Book F, page 5, but we do not find the deed in the record before us.

[t]hrough adverse possession, I've been on it and I farmed it for most of my life. I didn't try to make a deed for it, my aunt already had one. She bought out the heirs and I didn't try to make no deed over her.

Claude testified further as follows:

Q      Now, going back to your aunt Ms. Small . . . Other than this deed . . . in 1985, [are] there no other deeds pertaining to this piece of property from Ms. Small?

A      It's still in her name.

* * *

Q      . . . I take it you claim by adverse possession? . . .

A      That's right.

Q      And you stated that you've lived there on and off since 1937? Was it '37?

A      Yeah, I was born in '37.

Q      How many years did you live there in a row?

A      I don't know. I don't know how many years in a row.

Q      When is the last time you remember living there?

A      Last time I lived there was in the '70s when I moved to where I'm at now.

* * *

Mother and my aunt lived on it until my aunt died, so my son moved up there shortly after that.

The McCoys related that their son has resided on the property from the early 1980s to the present day.

The McCoys also argued that the McCoy family has paid taxes on parcels 4.00 and 4.01 since 1953 and that Claude McCoy personally has paid the property taxes since 1985; however, no tax receipts or other documentation have been provided in the record to support this claim. Scharlene Oney Branum submitted proof that she paid taxes on parcel 4.00 from 1991 to 2001. Mr. Wilkerson provided evidence that he paid taxes on the property in 2003 and 2005.

Leon Branum noted in his deposition that after he purchased the property in 1974, he decided to begin charging rent for the land. He recalled that he

> talked with Claude [McCoy] about it then. And I told him that I'd bought the property and I thought to assert my ownership I needed a little rent. And he paid me a little rent for that year. And he gave me a lot to think about. He talked about his mother and his aunt living up there. And pointed out that they were simple people, illiterate people that they had never lived anywhere else and they would be really upset to be -- to have to go somewhere else.

Eventually, Leon Branum decided to grant the McCoy family approximately two acres of the original tract of land.[3] The tract was surveyed and 1.78 acres were measured off. This section is listed as parcel 4.01 on the Union County Tax Map.

After the McCoys moved for summary judgment, the trial court held that they were the owners of the property in dispute through adverse possession. All deeds regarding the parcels executed after 1948 were declared null and void. Mr. Wilkerson timely filed a notice of appeal.

---

[3]According to Leon Branum, the deed was dated August 20, 1975, and conveyed the tract to "Ruby and Mossy for their lifetime and remainder to Claude [McCoy]." Documentation of the deed was not included in the record on appeal. However, mention of the deed is contained in the 2004 quit claim deed Leon executed at the behest of Dale McCoy:

> This property is also the property conveyed to Ruby McCoy as a lifetime estate by Leon Branum in 1975. Ruby McCoy did not record her deed but had use of the land during her lifetime.

> Ruby McCoy died on March 29, 2001[.] [H]owever in a deed written . . . on February 1, 1985[,] Ruby deeded any property she might own to her son, Dale L. McCoy.

> The death of Ruby McCoy and the absence of the lifetime estate deed leaves Leon Branum as the owner of record for the 2 acre tract.

## II.  ISSUES

Mr. Wilkerson presents the following issues, rephrased slightly, for our review:

1.  Whether the trial court erred in granting summary judgment where disputed issues of material fact exist under the common law doctrine of adverse possession and related statutory provisions; and

2.  Whether the trial court erred in granting summary judgment where the motion was not supported by sufficient admissible evidence.

## III.  STANDARD OF REVIEW

The applicable summary judgment standard in this matter was set out in the cases of *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76 (Tenn. 2008), and *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008).  In *Martin*, the Court set out the standard as follows:

The moving party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Tenn. R. Civ. P. 56.04; accord *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000).  The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).  Accordingly, a properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).  If the moving party fails to make this showing, then "the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails."  *McCarley*, 960 S.W.2d at 588; accord *Staples*, 15 S.W.3d at 88.

The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either:  (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at

trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *see also McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n. 5. Both methods require something more than an assertion that the nonmoving party has no evidence. *Byrd*, 847 S.W.2d at 215. Similarly, the presentation of evidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient. *McCarley*, 960 S.W.2d at 588. The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. We have held that to negate an essential element of the claim, the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party. *See Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004). If the moving party is unable to make the required showing, then its motion for summary judgment will fail. *Byrd*, 847 S.W.2d at 215.

If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. The nonmoving party may satisfy its burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*McCarley*, 960 S.W.2d at 588; accord *Byrd*, 847 S.W.2d at 215 n. 6. The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party. *McCarley,* 960 S.W.2d at 588. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A disputed fact presents a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

*Martin*, 271 S.W.3d at 83-84.

## IV. DISCUSSION

The McCoys contend that by 1948, the McCoy family had regained possession of the property at issue by adverse possession. To successfully bring a claim under the doctrine of adverse possession, a party has the burden of conclusively establishing that its possession has been "exclusive, actual, adverse, continuous, open and notorious for the required period of time." *Wilson v. Price*, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005) (citing *Hightower v. Pendergrass*, 662 S.W.2d 932, 935 n. 2 (Tenn. 1983)). Additionally, the party has the burden of establishing these elements by clear and convincing evidence. *O'Brien v. Waggoner*, 96 S.W.2d 170, 176 (Tenn. Ct. App. 1936).

A possession is adverse or "hostile" within the meaning of the law of adverse possession where one "claims to hold the possession as his, against the claims of any other." *Hightower*, 662 S.W.2d at 937; *Wilson*, 195 S.W.3d at 667. What the law requires is that "the possessor must use the property in a manner consistent with its nature and purpose and in such a way as to give notice to the rightful owner that another is asserting dominion over his property." *Wilson*, 195 S.W.3d at 667. The owner must have knowledge of the adverse claim, or it must be so open and notorious that he will be presumed to have notice of the claim. *Kirkman v. Brown*, 27 S.W. 709, 710 (Tenn. 1894). The possession must be of such a character as to leave no doubt of the claim of ownership by adverse possession and to give notice to the public of the possession and the claim. *Cooke v. Smith*, 721 S.W.2d 251, 254 (Tenn. Ct. App. 1985). Whether the possessor has treated the property in such a manner as to establish adverse possession is largely a question of fact.

In this state, when a party lacks "color of title," the prescriptive period to obtain title by way of adverse possession is twenty years. *See Cooke*, 721 S.W.2d at 255-56. It is undisputed that the McCoys lost legal title to the land by way of the sheriff's sale; thus, no McCoys can claim "color of title" to the land in dispute.

The deposition of Leon Branum asserts that George and Rosette McCoy stayed on the property with the permission of Elvin Branum. Leon attributes this willingness to let the McCoys stay on the land to the close relationship Elvin and Rosette had as cousins. However he also mentioned the issue of homestead. Under state law applicable at the time George McCoy's property was sold to satisfy his debt, it was the duty of the sheriff, levying on the land, to set apart homestead.[4] *See Beard v. Beard*, 10 Tenn. App. 52, 1928 WL 2220, at *3

---

[4]It appears that the value of the property at issue here was less than $1,000, the exemption amount at the time, so the whole of the property constituted the homestead by operation of law.

(Jun. 22, 1928). The homestead, as a constitutional exemption,[5] could only be alienated by the joint conveyance of husband and wife. *Id*. at *3. As provided further in the *Beard* opinion:

> In *Jarman v. Jarman*, 4 Lea, 675, the court said: "By our law the homestead vests in the husband and wife jointly and is a life estate. Upon the death of either it vests in the survivor. Neither has the right to dispose of it except with the consent of the other, by will or otherwise, and then only in the mode prescribed by statute. The right of the wife is fixed during coverture and is lost only by her voluntary alienation or abandonment, or by her death."
>
> And in *Williams v. Williams*, 7 Bax. (66 Tenn.), 116, the court said:
>
> ". . . The wife is recognized as having a present, subsisting and continuing interest in the maintenance and preservation of the benefits of this possession and that she has such a right in the land, connected with the right of possession, that when that right is violated she is entitled to claim the protection of the courts."

*Beard*, 1928 WL 2220, at *4.

Accordingly, George McCoy could not "dispose of the homestead by suffering the same to be sold under an execution predicated on a judgment against himself." *Id.* at *3. His creditor, Elvin Branum, could not, by levy and sale, deprive Rosette of her homestead right. *Id.* "A judgment creditor of the husband [could not] defeat the wife's right of homestead by a sale of the land under execution." *Id.* (citing Shan. Anno. Code, § 3798). Elvin was required by law to allow George and Rosette to remain on the property. Therefore, their possession under homestead cannot constitute adverse possession.

It appears the homestead expired upon the death of Rosette in 1956. The record before us reveals no proof regarding another twenty-year period of adverse possession after that date. While we must observe that the failure by members of the Branum family to actively object to Ruby McCoy and Mossy McCoy remaining on the land does not imply permissive use, *Lamons v. Mathes*, 232 S.W.2d 558, 563 (Tenn. Ct. App. 1950), it is significant that Leon Branum discussed the status of the property with Claude McCoy in the early 1970s and thereafter conveyed nearly two acres of the property at issue to the elderly McCoy women, during which time the McCoys did not assert their belief that they already owned all the land at issue pursuant to adverse possession. The McCoys did not, therefore,

---

[5]Articale XI, section 11 of the Tennessee Constitution.

at least in this instance, treat the property as their own to the extent that others would know they were asserting ownership. *See Cooke*, 721 S.W.2d at 254-55. Clearly, disputed issues of material fact exist concerning whether the McCoys have satisfied the elements of adverse possession.[6] As the moving party, the McCoys must establish that there are no genuine issues of material fact. Summary judgment was improperly awarded by the trial court.

Mr. Wilkerson also questions the contention by the McCoys that members of the McCoy family have paid the property taxes on the property at issue over the years, thereby affording them the presumption that they are the prima facie legal owners of the parcels under Tennessee Code Annotated section 28-2-109. Pursuant to that statutory provision, the legislature has established a presumption that an adverse possessor who pays taxes on property for twenty years continuously is the prima facie legal owner of that tract of land. Tenn. Code Ann. § 28-2-109 (2000). In an affidavit attached to the complaint in this matter, Claude McCoy swore in pertinent part as follows:

> 5. It is my understanding that George McCoy, and his heirs, have paid property taxes on this property either since 1917 or since Union County assessed property taxes.

> 6. Based upon the receipts that I have in my possession, property taxes have been paid by my family since 1953.

> 7. I have personally paid the property taxes since 1985 to the present.

The record before this court, however, is devoid of any documentation demonstrating that any property taxes on the subject property have been paid by members of the McCoy family. The exhibits provided in this appeal show that Scharlene Oney Branum and Mr. Wilkerson provided proof that they have paid property taxes in recent years, but no receipts were attached to Claude McCoy's affidavit to show affirmatively the tax payments about which he testified.[7] Accordingly, the McCoys are not entitled to the presumption afforded under

---

[6]In order to invoke the seven-year limitations period set forth in Tennessee Code Annotated section 28-2-103 (2000), adverse possession for a period of at least seven years must be demonstrated. *See Wilson*, 195 S.W.3d at 667. Under the record currently before us, there has been no proof of adverse possession at any time.

[7]Rule 56.06 of the Tennessee Rules of Civil Procedure provides as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant

(continued...)

Tennessee Code Annotated section 28-2-109. There is no support in this record for the trial court's finding "that the McCoys have paid property taxes on the property for more than thirty (30) years."

As the Tennessee Supreme Court has noted, a properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See Staples*, 15 S.W.3d at 88. The record before us fails to make this showing.

## V. CONCLUSION

The judgment of the trial court is reversed and this cause remanded to the trial court for further proceedings consistent with this opinion. Upon remand, this case shall be assigned to a new judge for hearing to completion. Further, the trial court is initially directed to address whether the McCoys have the requisite standing. Costs on appeal are assessed to the appellees, Claude W. McCoy and Helen B. McCoy.

_____
JOHN W. McCLARTY, JUDGE

---

[7](...continued)
is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.