# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 21, 2013 Session

## ESTATE OF MINNIE BELL WOODARD V. JAMES W. FRANKLIN, ET AL.

**Appeal from the Chancery Court for Jackson County**
**No. 2010cv34     Charles K. Smith, Chancellor**

---

**No. M2012-01408-COA-R3-CV - Filed January 14, 2014**

---

A widow filed a complaint seeking a determination of the proper owner of a tract of real property held in her husband's name. The widow lived on the property for over twenty years after her husband died. She believed she was the proper owner until she became interested in selling the property and learned her name was not on the deed. The trial court ruled the widow acquired the property by common law adverse possession, and one of the husband's heirs-at-law appealed. The husband's great nephew asserted the widow had permission to remain on the property, and, therefore, could not obtain title through adverse possession. We disagree and affirm the trial court's judgment. The widow possessed and used the property openly and exclusively for over twenty years, thereby putting the world on notice that she claimed ownership of the property.

## Tenn R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Dean Robinson, Mount Juliet, Tennessee, for the appellant, James W. Franklin.

Jamie Douglas Winkler, Jack O. Bellar, Carthage, Tennessee, for the appellee, Diane Murray, Executrix of the Estate of Minnie Bell Woodard.

# OPINION

## I. BACKGROUND

Minnie Bell Woodard filed a complaint for declaratory judgment and to quiet title with regard to a tract of 83 acres of real property located in Jackson County, Tennessee ("the Property"). When she filed her complaint, title to the Property was in the name of Ms. Woodard's husband, Odell Woodard, who had died intestate in 1970.[1] Ms. Woodard did not realize there was any question about her ownership of the Property until she became interested in selling the Property in or about 2009 or 2010. This was the first time she learned that her name was not on the deed along with that of her husband.

Ms. Woodard maintained the Property and paid the real estate taxes assessed each year from the time her husband passed away in 1970 until she died in 2011. Ms. Woodard lived continuously on the Property from 1960, when she married Mr. Woodard, until sometime in the 1990s, when she moved a couple of miles away to care for an ailing brother. Ms. Woodard grew tobacco on the Property and raised cows for milk. Even when she was not living on the Property, no one other than Ms. Woodard was responsible for the Property's upkeep and payment of bills. Ms. Woodard testified that no one ever claimed any ownership interest in the Property prior to the time she filed her complaint.

Hollis Mullinax is a grandson of one of Odell's siblings, and he was named as a defendant in this case. Mr. Mullinax is the only defendant who provided evidence at trial. Mr. Mullinax testified that he occasionally hunted on the Property. Ms. Woodard testified during her deposition that Mr. Mullinax always asked her permission before coming onto the Property to hunt. Mr. Mullinax agreed that he did not go onto the Property without Ms. Woodard's permission.

When he was asked about the ownership of the Property after Odell passed away, Mr. Mullinax testified as follows:

> Q:     At what point in time did you -- as his nephew, at what point in time did you realize or did you acknowledge the status of ownership of the 83 acres?
>
> . . . . .

---

[1]Odell and his brother Howard purchased the Property in 1947. Howard then sold his portion of the Property to Odell in 1962.

A: Me and my daddy and Roy's daddy have had this conversation about taking this farm. It being ours. We had to shoot them before they went over there and took it away from Ms. Minnie Bell. As long as the taxes was paid and she cut the wood, I mean cut the timber and nobody had any objections. And we checked to make sure the taxes was paid and as long as the taxes was paid up, we never said a word about it.

Q: Did you recognize what that right was in 1970 or did you recognize that --

A: Yeah, we knew it right after he died.

Q: What was -- you said you talked to Roy. He's a defendant in this. And basically what was your position as far as what Ms. Minnie Bell Woodard's status was?

A: As long as she lived, we just let her live there. I mean, do whatever she wanted with the property. And we didn't want to take it away or nothing.

Q: Did anybody -- did you or anybody that you know ever approach Ms. Minnie Bell Woodard --

A: No, sir.

Q: --tell her she didn't own that or get off or anything?

A: No, sir.

## II. TRIAL COURT'S RULINGS

The trial court orally issued Findings of Fact and Conclusions of Law following the trial, which were later incorporated into its judgment. The pertinent portion of the court's ruling is as follows:

[I]n 1970, according to the law at that time that was in existence, Ms. Minnie Bell Woodard would have had a right to a dower interest in this 83 acres because it was solely in the name of her husband, Odell. But she had to make a request for one-third of it to be assigned to her and she never made this

3

request.  So this property never was assigned to her.

She continued to live on this property.  She continued to pay the taxes on this property up to the time of her death which was July of 2010 [sic].  She -- according to her testimony she stayed on this property until 1992, held it out as hers, thought it was hers, timbered it, fixed the fences all around the ridges, all around the property, did all the repair work to the barn, to the houses, raised tobacco and milked cows, did all the work herself until she was not able to do it or had to move over to live with her brothers which she thinks was about 1992.

. . . . .

[A]ccording to Mr. Mullinax, she controlled this property.  He asked her for permission to enter the property before he would enter it to hunt or anything.  And all the evidence is, is that -- I get the inference that she collected the tobacco money, the milk money, and the hunting privilege money.  And there is no testimony that she shared with anybody.  I am of the impression that she probably kept it all to herself.  There's no direct evidence of that, but I think I can properly draw that inference from the testimony that was given.

. . . . .

[S]he was holding this property out as her own.  She thought it was hers.  Diane and all those people thought it was hers. . . .

. . . . .

I find that this -- she was -- Minnie was an adverse possessor.  She held this property for a period of more than 20 years.  There was no assurance of color of title.  But I find that the title does vest in her.  Find that she paid the taxes on this property for more than 20 years.  And even if one could argue that there was no positive proof or unambiguous circumstances showing that a possession is or is not adverse, I find that the exclusive possession and use of the land would allow this Court to presume it to be adverse . . . .

Certainly the plaintiffs here have shown by the one person that took the stand and by all the people that answered the interrogatories that they never paid any taxes on this property for 40 years since the death -- over 40 years

4

since the death of Odell. That they have clearly carried their burden of establishing the defendants' failure to pay taxes by the testimony of the one -- Mr. Mullinax -- that testified, and all the answers to interrogatories that were made exhibits.

. . . [The Defendants] would be barred under [28-2-110] from even pursuing. But I also feel like based upon this case of Shim under common law that I can find that if one has paid taxes, held the property adversely for more than 20 years, that they can be -- that they were in possession of the land for 20 years, and it was uninterrupted, that I can and I am vesting title in the adverse holder of this property.

The trial court also issued a written Order and Judgment stating:

It is therefore **ORDERED, ADJUDGED and DECREED** that . . . the Plaintiff, Minnie Bell Woodard, has held open, notorious, and undisturbed actual, exclusive possession of the [Property] for a period of in excess of twenty (20) years prior to the institution of this suit and has continuously paid the taxes and assessments levied against the lands during that time.

It is therefore **ORDERED, ADJUDGED and DECREED** that title to [the Property] is forever quieted and confirmed in Plaintiff, Diane Murray, Executrix of the Estate of Minnie Bell Woodard against any claim of the named Defendants or any other person.

The only defendant to pursue the appeal to this Court is James W. Franklin, who was Mr. Woodard's great nephew. Mr. Franklin argues the trial court erred in ruling Ms. Woodard acquired the Property by adverse possession because (1) she had permission to use the property and (2) she did not have color of title.

### III. ADVERSE POSSESSION

The issue of whether the use of another's land has been adverse or permissive is a question of fact. *Wilson v. Price*, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005). Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review the trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

5

Adverse possession of real estate is defined as "a possession thereof inconsistent with the right of the true owner, and when such possession is accompanied by certain acts and circumstances, the title will vest in the possessor." 10 THOMPSON ON REAL PROPERTY §87.01, at 73-74 (David A. Thomas ed., 1994). A person claiming title to property by adverse possession must show his or her possession of the property was exclusive, actual, adverse, continuous, open, and notorious for a particular period of time. *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366, 377 (Tenn. 2006). The owner must know about the adverse claim, or it must be so open and notorious that he or she is presumed to have notice of the claim. *Michael v. Jakes*, 2002 WL 1484448, at *6 (Tenn. Ct. App. Dec. 2, 2002) (citing *Kirkman v. Brown*, 27 S.W. 709, 710 (Tenn. 1894)).

Tennessee recognizes adverse possession under the common law. Our Supreme Court has instructed us that

> In our state, common law adverse possession rests upon the proposition that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed.

*Shim*, 226 S.W.3d at 376-77 (quotations omitted) (citing *Ferguson v. Prince*, 190 S.W. 548, 552 (Tenn. 1916) and *Webb v. Harris*, 315 S.W.2d 274, 277 (Tenn. Ct. App. 1958)). Color of title is not required to prove adverse possession under the common law as it is to satisfy adverse possession under § 28-2-105. *Shim*, 226 S.W.3d at 377 (citing *Keel v. Sutton*, 219 S.W. 351, 352-53 (Tenn. 1920) and *Hallmark v. Tidwell*, 849 S.W.2d 787, 792-93 (Tenn. Ct. App. 1992)); *see Wilson*, 195 S.W.3d at 666 ("In Tennessee, twenty years is the prescriptive period for common law adverse possession without color of title."); *Michael*, 2002 WL 1484448, at *6 (adverse possession is not based on assertion of title by legal writing or anything other than possession for requisite time and under requisite circumstances).

Adverse possession must be proved by clear and convincing evidence. *Shim*, 226 S.W.3d at 377 (citing *O'Brien v. Waggoner*, 96 S.W.2d 170, 176 (Tenn. Ct. App. 1936)). Mr. Franklin does not contest the trial court's finding that Ms. Woodard held the Property exclusively, openly, notoriously, actually, or continuously for a period in excess of twenty years. Instead, he contends that Ms. Woodard had permission by the true owners to occupy the Property for as long as she did, and that, therefore, her possession was not adverse.[2]

---

[2]Mr. Franklin also relies on the case *Lee v. Harris*, 219 S.W.2d 892 (Tenn. 1949). That case is distinguishable, however, because, *inter alia*, the widow of the title holder was in possession of the disputed property for only nineteen years, not the requisite twenty-year period necessary to prove adverse possession under the common law. *Id.* at 892, 894.

6

The problem with Mr. Franklin's position is the lack of evidence showing Ms. Woodard was occupying the Property pursuant to anyone else's permission. The argument Mr. Franklin makes was rejected in *Wilson v. Price*, 195 S.W.3d 661 (Tenn. Ct. App. 2005). The defendants there argued the plaintiffs could not prove adverse possession with respect to a disputed strip of land because the defendants "acquiesced" in the plaintiffs' encroachment, and the possession was, therefore, permissive. *Id.* at 668. The Court of Appeals disagreed, explaining

> Failure to actively object does not imply permission. As this Court has noted, if failure to object could be considered evidence of permissive use the holder of the legal title could always defeat an adverse claimant by merely showing that he had never objected to the use of his property.

*Wilson*, 195 S.W.3d at 669 (quotations omitted) (citing *Lamons v. Mathes*, 232 S.W.2d 558, 563 (Tenn. Ct. App. 1950)).

Ms. Woodard testified that, from the time of Odell's death in 1970, she always believed the Property belonged to her. She testified that no one ever told her, or even suggested to her, that anyone else was the rightful owner of the Property.[3] Indeed, when her great nephew, Hollis Mullinax, wanted to hunt on the Property, he always asked her permission before coming onto the land. Mr. Mullinax's conduct was not consistent with the belief that Ms. Woodard was using the Property permissively, or that Mr. Mullinax, or his father, held a superior interest in the Property. Ms. Woodard did not even know there was a cloud on the title until 2009 or 2010, when she wanted to sell the Property and learned that her name was not on the warranty deed.

The Supreme Court has addressed the requirements for proving a possession is "adverse":

> [I]n the absence of positive proof or unambiguous circumstances showing that a possession is or is not adverse, the exclusive possession and use of the land are presumed to be adverse, it is not necessary to show an intention to hold and claim the property in spite of the fact that the legal title may be in another. The possession of one who holds property as his own is adverse to all the world, although he never heard of an adverse claim. . . . The fact that the occupant might, if he knew that he was on his neighbor's land, recognize and accede to the latter's title, does not affect the adverse character of his possession . . . .

---

[3]Mr. Mullinax is the only individual who testified for the defendants at trial, and he testified that neither he nor anyone he knew ever told Ms. Woodard she did not own the Property.

7

*Shim*, 226 S.W.3d at 378; *see Wilson*, 195 S.W.3d at 667-78 ("hostility" for purposes of adverse possession requires no ill will or intent to possess another's land; instead, it must be open so the world is on notice that adverse possessor claims ownership of property); *Lemm v. Adams*, 955 S.W.2d 70, 72 (Tenn. Ct. App. 1997) (actual intent to possess adversely is not prerequisite for finding of adverse possession); *see also Peoples v. Hagaman*, 215 S.W.2d 827, 829 (Tenn. Ct. App. 1948) (mistake in property boundary does not mean possession is not adverse).

As the *Michael* court aptly stated, "The question is whether the claimant treated the property as his own to the extent that others would know he or she was asserting ownership." *Michael*, 2002 WL 1484448, at *10. Ms. Woodard is in a similar position to the defendants in *Cooke v. Smith*, 721 S.W.2d 251 (Tenn. Ct. App. 1986). In that case, the defendants were in actual, notorious, open, continuous, and exclusive possession of the land at issue for over thirty years. *Id.* at 254. No ownership of the land was claimed by anyone else, and the defendants cleared and farmed the land, in addition to making improvements upon it. *Id.* at 254-55. Evidence was presented that other people who lived in the area generally recognized that the defendants owned the land. *Id.* at 255. Under these circumstances, the trial court held, and the Court of Appeals agreed, that the defendants held the land adversely and vested title to the property in the defendants under the theory of adverse possession. *Id.* at 256.

Thus, it is not necessary to prove Ms. Woodard knew that she was possessing land that belonged to someone else for a court to find she held the Property "adversely." The evidence was undisputed that Ms. Woodard possessed and used the Property openly and exclusively, putting the world on notice that she claimed ownership of the Property.

The evidence does not preponderate against the trial court's findings that Ms. Woodard's possession of the Property was adverse. Under the applicable law, Ms. Woodard acquired ownership of the Property through adverse possession. We affirm the trial court's judgment that title to the Property is forever quieted and confirmed in Diane Murray, Executrix of the Estate of Minnie Bell Woodard, against any claim of the named Defendants or any other person.

## IV. CONCLUSION

The trial court's judgment is affirmed.  Costs of this appeal shall be taxed to the appellant, James W. Franklin, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE